NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

IN RE TERMINATION OF PARENTAL RIGHTS AS TO D.C. and T.R.

No. 1 CA-JV 25-0183

FILED 06-30-2026

---

Appeal from the Superior Court in Maricopa County
No.  JD39791
JS22544
The Honorable Glenn A. Allen, Judge

**AFFIRMED**

---

COUNSEL

Law Office of H. Clark Jones LLC, Mesa
By H. Clark Jones
*Counsel for Appellant Ashley P.*

Maricopa County Public Advocate, Mesa
By Seth Draper
*Counsel for Appellant Trenton R.*

Arizona Attorney General's Office, Phoenix
By Anna V. Vaszar
*Counsel for Appellee Department of Child Safety*

Maricopa County Office of the Legal Advocate, Phoenix
By Amanda L. Adams
*Counsel for Appellees D.C. and T.R.*

**MEMORANDUM DECISION**

Judge Brian Y. Furuya delivered the decision of the Court, in which Presiding Judge Andrew M. Jacobs and Judge James B. Morse Jr. joined.

**F U R U Y A**, Judge:

¶1        Ashley P. ("Mother") appeals the juvenile court's order terminating her parental rights to her minor children, D.C. and T.R.[1] Trenton R. ("Father") appeals the court's termination of his parental rights to T.R. For the following reasons, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2        Mother is the biological mother of D.C., born August 2020, and both Mother and Father are the biological parents of T.R., born November 2021. D.C. was born substance-exposed to marijuana and placed in the NICU due to breathing issues, feeding problems, jaundice, and withdrawal tremors. Mother tested positive for marijuana three times during the pregnancy and admitted to daily use. She disclosed diagnoses of multiple mental health disorders but was not being treated for any of them and refused medication. She was also homeless, unemployed, and lacked supplies to care for a newborn. The Department of Child Safety ("DCS") took custody of D.C., placed him with a foster family, and filed a dependency petition. The juvenile court found D.C. dependent.

¶3        DCS referred Mother for multiple reunification services, including drug testing, psychological evaluation, parent-aide services, supervised visitation, and transportation. From August 2020 to November 2021, Mother sporadically participated in services and refused to complete a psychological evaluation. Parent-aide services were closed in April 2021 after Mother failed to attend multiple sessions. Mother disrupted supervised visitation by bringing drugs and drug paraphernalia to visits and acting erratic and aggressive toward supervisors, while making minimal efforts to engage with D.C. Visitation eventually closed after Mother cancelled a visit mid-session, yelled at the parent aide, and

---

[1]        The juvenile court also terminated the parental rights of Dale C. and John Doe, the alleged biological fathers of D.C. But they are not parties to this appeal.

prompted intervention by security. A re-referral for supervised visitation in September 2021 yielded no visits.

¶4         In September 2021, while about seven months pregnant with T.R., Mother tested positive for methamphetamine, amphetamine, and THC. T.R. was removed at birth. Both parents were hostile at the hospital; security made Father leave after he threatened to abscond with the child, and hospital staff noted a strong odor of marijuana in the baby's room. T.R. was placed in foster care together with D.C., and the juvenile court adjudicated T.R. dependent in February 2022.

¶5         Over the next four years, DCS continued offering both parents reunification services. Mother underwent multiple psychological evaluations over the course of the case. A 2022 evaluation diagnosed her with many disorders — including for anxiety — and noted immature functioning and that she was likely unaware of her children's needs. A 2024 evaluation added Cannabis Use Disorder (Severe) to her diagnoses. A February 2025 evaluation found: (1) Mother produced significant results on a child-abuse-risk index, (2) her continued marijuana use posed risks of harm to any child in her care, and (3) she tended to say what she thought would make a positive impression.

¶6         DCS referred both parents to the Nurturing Parent Program ("NPP") six times between 2023 and 2025. Each referral was ultimately closed due to the parents' hostility, refusal to engage, and failure to demonstrate progress. During the sixth and final NPP referral — just four months before the start of the termination trial — the parent aide reflected that Mother "is in the preparation stage," and "has her mind set and there is no changing her view on issues such as keeping her children safe." Just two months before trial, the parent aide recorded that Mother "will buy drugs before she will take care of herself," and that she "can't leave the house without being high." And the month before trial, the parent aide observed that "Mother is in the relapse stage" and she "needs [marijuana] in order to function and deal with her daily life."

¶7         Neither parent ever progressed to unsupervised visitation at any point during the case. A bonding and best-interest assessment found both parents detached and unresponsive, with the children demonstrating a primary bond with their foster mother.

¶8         At the four-day severance trial in August and September 2025, the case manager testified that Mother had made insufficient progress

during the five-year dependency. Both children were adoptable, and their foster placement intended to adopt them.

**¶9**        The court terminated Mother's parental rights to both D.C. and T.R. and Father's parental rights to T.R. on the fifteen-months' time-in-care ground. They both timely appealed. We have jurisdiction under Arizona Revised Statutes ("A.R.S.") Sections 8-235, 12-120.21, and 12-2101(A)(1).

## DISCUSSION

### I.        Reasonable Evidence Supports the Court's Termination Order.

**¶10**        A parent's right to "the care, custody, and management of their children" is fundamental but not absolute. *Brionna J. v. Dep't of Child Safety*, 255 Ariz. 471, 476 ¶ 18 (2023) (citation modified). If the juvenile court finds, by clear and convincing evidence, the existence of at least one of the statutory grounds under A.R.S. Section 8-533(B) and, by a preponderance of the evidence, that termination is in the child's best interests, it may terminate parental rights. *Id.* at 477 ¶ 20.

**¶11**        In conducting our review, "[w]e will affirm a termination order unless the juvenile court abuses its discretion or the court's findings are not supported by reasonable evidence." *Timothy B. v. Dep't of Child Safety*, 252 Ariz. 470, 474 ¶ 14 (2022). First, we examine the "factual findings made by the juvenile court, and its factual findings will be accepted if reasonable evidence and inferences support them." *Brionna J.*, 255 Ariz. at 478 ¶ 30 (citation modified). We also view the record in the light most favorable to upholding the court's findings, *id.* at 479 ¶ 32, and do not reweigh evidence or reevaluate credibility determinations, even in the presence of "sharply disputed facts[,]" *Alma S. v. Dep't of Child Safety*, 245 Ariz. 146, 151 ¶ 18 (2018) (citation modified).

**¶12**        Second, we review the court's legal conclusions regarding the statutory ground for termination, affirming those conclusions "unless they are clearly erroneous." *Brionna J.*, 255 Ariz. at 478–79 ¶ 31. Under this standard, "the question of whether the statutory factor is supported by the mandated quantum of evidence will not be disturbed unless the appellate court determines as a matter of law that no one could reasonably find the evidence to be clear and convincing." *Id.* at 479 ¶ 31 (citation modified).

### A. Reasonable evidence supports termination under A.R.S. § 8-533(B)(8)(c).

**¶13** To terminate a parent's rights under the fifteen months' out-of-home placement ground, the court must find: (1) DCS has made "diligent efforts to provide appropriate reunification services[,]" and despite such efforts, (2) "[t]he child has been in an out-of-home placement for a cumulative total period of fifteen months or longer pursuant to court order or voluntary placement[,]" (3) "the parent has been unable to remedy the circumstances that cause the child to be in an out-of-home placement[,]" and (4) "there is a substantial likelihood that the parent will not be capable of exercising proper and effective parental care and control in the near future." A.R.S. § 8-533(B)(8)(c), (11)(b).

**¶14** Here, Mother contests only that she has been unable to remedy the circumstances that caused D.C. and T.R. to be in out-of-home care and that there is a substantial likelihood that she will not be capable of exercising proper and effective parental care and control in the near future. She asserts that the court's findings to the contrary are not supported by reasonable evidence. We disagree.

**¶15** D.C. and T.R. were removed from Mother's care in 2020 and 2021 respectively because, among other things, both were born substance-exposed to THC, and DCS was concerned about Mother's ability to safely and independently care for her children. At the time of both removals, Mother admitted to daily use of marijuana to treat her severe anxiety and other mental health conditions.

**¶16** Mother's heavy marijuana use troubled DCS for more than its potential to cause direct harm to the children through exposure. In the dependency proceedings, DCS made clear that "substance abuse impairs a parent's ability to provide proper care and prevents the parent from performing essential parental responsibilities or places a child at risk of harm in the parent's care because common symptoms of marijuana use include sensory distortion, impaired decision making and reaction time, anxiety, and paranoia." Indeed, the record contains multiple reports from parent aides confirming concerns that Mother's parenting skills and safety awareness were lacking, due, at least in part, to the impact of marijuana. This concern did not lessen, even five years later at the severance trial. Mother was diagnosed with "Cannabis Use Disorder (Severe)" during a psychological evaluation conducted in late 2024, and again in February of 2025. And Mother's daily marijuana use continued unabated through the date of trial on DCS's termination petition, where she admitted that she

continued to smoke it every day, multiple times a day, to self-medicate, and intended to continue to do so if the children were returned to her, unless absolutely required not to. In short, the children were removed, among other reasons, because Mother's lack of parenting skills and safety awareness presented a danger to D.C. and T.R. Her marijuana use was a significant contributor to those deficiencies. And those deficiencies persisted at the time of trial, as did Mother's heavy marijuana use.

¶17      Over the life of this case, Mother received a bevy of services, which included programs intended to help Mother develop the essential skills and awareness that she needed to care safely and independently for D.C. and T.R. Yet, Mother's participation was reluctant, lacking, and sometimes non-existent. She was adamant that she would not stop using marijuana. And Mother's progress was slow and minimal, such that after five years in a dependency proceeding, she still had not developed the ability to safely and independently care for her children. And her continuous, heavy use of marijuana continued to impact both her ability to complete services and her ability to provide a safe and effective home for the children.

¶18      Further, we agree with the juvenile court that "the crux of the case here, [is] how long should these children have to wait to see if and when the parents will be able to have them in their care." It is undisputed that D.C. and T.R. have been in out-of-home care their entire lives. Nor is it contested that Mother and Father have never parented their children without close supervision and assistance. And as noted, they were not in any position to do so at the time of trial. Though Mother and Father themselves were confident that they were able to immediately parent the children, the record is devoid of any evidence that any evaluator, provider, counselor, parent aide, or other professional associated with this case shared the parents' opinion. To the contrary, the 2024 Bonding/Best Interests Assessment reported that "despite participating in services, the mother and father have not demonstrated significant behavioral change." This is reasonable evidence supporting the court's finding that there is a substantial likelihood Mother will not be capable of exercising proper and effective parental care and control in the near future.

¶19      Mother argues she has been working hard and has made substantial progress in addressing DCS's concerns. She points to evidence that she maintains appropriate housing, that she has "stable income" through social security and disability income, and that she completed courses in domestic violence, anger management, and parenting. Accepting these assertions as true, Mother's arguments, at most, highlight a contest in

the evidence. The evidence and inferences supporting termination are reasonable and are such as a reasonable person could accept as clear and convincing. *Brionna J.*, 255 Ariz. at 478–79 ¶¶ 30–31. And we cannot reweigh it, even though Mother sharply disputes the court's findings. *Alma S.*, 245 Ariz. at 151 ¶ 18.

### B. Reasonable evidence supports the court's best-interests finding.

**¶20**　　Mother further argues that insufficient evidence supports the court's finding that termination of her parental rights was in D.C.'s and T.R.'s best interests. To terminate a parent's parental rights, in addition to finding at least one statutory ground for termination, the court must also find, by a preponderance of the evidence, that termination is in the child's best interests. A.R.S. § 8-533(B); Ariz. R.P. Juv. Ct. 353(a). We review a best-interests finding for an abuse of discretion and reverse only if "no reasonable evidence" supports the finding. *Mary Lou C. v. Ariz. Dep't of Econ. Sec.*, 207 Ariz. 43, 47 ¶ 8 (App. 2004).

**¶21**　　Termination is in a child's best interests if that child will either benefit from termination or be harmed by continuing the parent-child relationship. *Alma S.*, 245 Ariz. at 150 ¶ 13. The primary focus is on "protecting a child's interest in stability and security." *Demetrius L. v. Joshlynn F.*, 239 Ariz. 1, 4 ¶ 15 (2016) (citation modified). Placement with one who will adopt the child may support a best-interests finding. *See Maricopa Cnty. Juv. Action No. JS-500274*, 167 Ariz. 1, 6 (1990).

**¶22**　　Here, D.C. and T.R. have been with their current placement their entire lives and that placement is willing to adopt them. This uncontested evidence supports the court's best-interests finding. Again, though Mother asserts that other evidence supports that Mother is bonded to the children, that is a dispute in the evidence, the balancing of which we will not revisit. *Alma S.*, 245 Ariz. at 151 ¶ 18. We see no error.

## II. Father's Due Process Rights Were Not Infringed.

**¶23**　　We review constitutional issues de novo. *Brenda D. v. Dep't of Child Safety*, 243 Ariz. 437, 442 ¶ 15 (2018). Due process requires notice and an "opportunity to be heard at a meaningful time and in a meaningful manner[.]" *Dep't of Child Safety v. Carel G.*, 260 Ariz. 263, 270 ¶ 26 (App. 2025) (citation modified).

**¶24**　　Here, Father contends his constitutional right to due process was violated because the court "impermissibly conform[ed] the allegations

to the evidence presented." He objects to the court's finding that Father's ongoing marijuana use was the cause of his inability to care for T.R. and this constituted an implied amendment of the petition for termination to include a substance abuse ground. He argues he did not have proper notice that his marijuana usage was an issue in the termination proceedings because DCS stopped requiring him to drug test, did not include a separate substance abuse count in the petition for termination, and "only pleaded that marijuana was an initial concern." Not so.

¶25　　　　DCS did not plead — and the court did not add, either expressly or impliedly — a termination ground under A.R.S. Section 8-533(B)(3) for substance abuse.  Instead, the court proceeded exclusively on the fifteen-months' time-in-care ground under A.R.S. Section 8-533(B)(8)(c).

¶26　　　　True, the court's reasoning on this ground draws heavily from evidence of Father's and Mother's severe marijuana use. But the court's analysis used that evidence to discuss what caused D.C. and T.R. to be in out-of-home care, the impact the marijuana use has had on Father's and Mother's inability to parent the children safely and independently, and to gauge whether Father and Mother will be able to rectify the circumstances that caused the children's dependency in the near future. These all relate to and support elements of the fifteen-months' ground. It is irrelevant that they might also have supported a finding of termination under a separate substance-abuse ground. *See* A.R.S. § 8-533(B)(3).

¶27　　　　Nor did Father lack sufficient notice. As Father acknowledges, the petition for termination states that his heavy marijuana use was part of DCS's initial concerns that led to T.R.'s out-of-home placement.  Father suggests that the phrasing "initial concern" indicates his marijuana use was no longer *any* concern. This reading is inconsistent with the context of the petition and the case's long history and the evidence.

¶28　　　　First, when read in context, the reference to "initial concern" is properly understood as a temporal descriptor, not a limitation. DCS noted that T.R.'s out-of-home placement began as a result of multiple causes, including Father's use of marijuana "several times per day." Because the later petition to terminate sought termination under A.R.S. Section 8-533(B)(8)(c), DCS needed to prove Father was unable to remedy the circumstances that caused T.R. to be in out-of-home care. Thus, Father's marijuana use, as a cause of T.R.'s removal, was directly relevant and at issue. Inferring otherwise contradicts the main point of the text.

**¶29** Second, Father's marijuana use has been a consistent concern throughout T.R.'s dependency. It was repeatedly addressed as a source problem that was preventing return of the children. NPP providers, DCS's case manager, the parents' own counselors, and the Bonding/Best Interests Assessment evaluator all referenced marijuana to some degree or another. Given its centrality to the entire case, Father's claim that he had no notice that his heavy marijuana use continued to be a central issue in these proceedings is not well-taken.

**¶30** Moreover, Father did not raise his due process challenge regarding notice to the juvenile court. As such, we review only for fundamental error and Father bears the burden of showing both fundamental error and prejudice. *See Brenda D.*, 243 Ariz. at 447–48 ¶¶ 37–38 (2018). Such prejudice must be proven affirmatively and cannot "rely on speculation." *Id.* at 448 ¶ 38.

**¶31** Here, Father was able to testify at length about his marijuana use, including to deny having a cannabis use disorder. Father's counsel was able to argue about his marijuana use in closing arguments. Father has not affirmatively proven any prejudice to sustain his due process challenge.

**¶32** The petition's reference was sufficient to put Father on notice that his marijuana use was at issue, he has failed to establish any prejudice, and we perceive no due process violation.

## CONCLUSION

**¶33** We affirm.

